UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DENZEL SAMONTA RIVERS,

        Plaintiff,

v.                                               Case No. 17-cv-1458-pp

MARTHA BREEN-SMITH,

        Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 45)**

---

      Denzel Rivers, who represents himself, filed a lawsuit under 42 U.S.C. §1983, alleging that the defendant violated his civil rights at the Green Bay Correctional Institution. Dkt. No. 1. Magistrate Judge William E. Duffin screened the complaint and allowed the plaintiff to proceed on an Eighth Amendment claim that the defendant showed deliberate indifference to the plaintiff's health and safety when she saw him cutting himself on November 19, 2014 and "walked off" without intervening or providing medical care. Dkt. No. 16 at 5. The defendant filed a motion for summary judgment, asserting that the plaintiff had not exhausted his administrative remedies before filing the case. Dkt. No. 45. The court denies the motion.

**I.    Facts**[1]

The plaintiff is a former Green Bay inmate. Dkt. No. 49 at ¶1. The defendant is a doctor at Green Bay. Id. at ¶7.

The complaint alleges that on November 19, 2014, the plaintiff was housed in "clinical observation" because he threatened self-harm. Dkt. No. 1 at ¶1. Clinical Observation is a "very restrictive" status used for the purpose of preventing an inmate from harming himself or someone else. Dkt. No. 49 at ¶41. Any property that an inmate could use to injure himself is removed from his cell, and this can include his mail. Id. at ¶43. Unit staff conduct rounds every fifteen minutes to make sure that the inmate is not harming himself or otherwise distressed. Id. at ¶42. If an inmate in restrictive status is on a "mail restriction," the staff collect his mail and hold it until the restriction is lifted or he's removed from observation status. Id. at ¶44. While the defendant does not say so directly, she implies that inmates on clinical observation status also can be subject to "a paper and/or pen restriction." Id. at ¶¶53, 55. An inmate who is on such a restriction "is allowed to come out of his cell[] to fill out forms and write letters upon request." Id. at ¶55. An inmate who is not on a restriction and wants to complete a form can ask staff for a blank form, and fill it out with

---

[1] The court takes facts from the defendant's proposed findings of fact, dkt. no. 49, the plaintiff's proposed findings of fact, dkt. nos. 57-58, and the plaintiff's complaint, dkt. no. 1, which the court must construe as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996).

any supplies he has on hand; he can hand it back to staff to submit to an Inmate Complaint Examiner (ICE). Id. at ¶53.

At around 4:00 p.m. on November 19, 2014, the plaintiff asked prison staff to contact a psychologist because he was having suicidal thoughts. Id. at ¶¶1-2. The plaintiff took a piece of yellow metal, cut himself and smeared blood on the windows. Id. at ¶3.

The defendant arrived at the plaintiff's cell about twenty-five minutes later, around 4:25 p.m. Id. at ¶4. The plaintiff "immediately" told the defendant that he was suicidal, had a sharp piece of metal and had been cutting himself. Id. at ¶4. The plaintiff states that he showed the defendant the piece of metal and his lacerations, and asked to be placed in mechanical bed restraints. Id. at ¶5. The defendant did nothing and simply "walked off" without notifying anyone. Id. at ¶¶6-7. The defendant didn't confiscate the yellow piece of metal that the plaintiff was using to cut himself. Id. at ¶7. The plaintiff's suicidal thoughts got worse and he continued to cut himself. Id. at ¶8. He bled out and had a three-inch laceration on his left forearm. Id.

Five days later, on November 24, 2014, the plaintiff submitted two offender complaints, one alleging that Dr. Harris-Forbes (not a defendant) refused to place him in restraints, and the other alleging that prison staff did not give him his nebulizer treatment upon request. Dkt. No. 49 at ¶22; Dkt. No. 50-1 at 1. Four days after that, on November 28, 2014, the plaintiff submitted a third offender complaint, asserting that the defendant had been aware on

3

November 19, 2014 that the plaintiff was at risk of harm, but failed to protect him by putting him in restraints. Dkt. No. 49 at ¶¶19-21; Dkt. No. 57 at ¶7.

Under the Inmate Complaint Review System (ICRS), an inmate must file a complaint with an ICE within fourteen days of the date the event that gives rise to the complaint occurs. Id. at ¶10 (citing Wis. Admin. Code §310.09). When the ICE receives an inmate complaint, he or she must review it; if it does not meet the requirements if Wis. Admin. Code §DOC 310, the ICE may return the complaint to the inmate. Id. at ¶¶11-12. An ICE may accept late-filed complaints for good cause shown. Id. at ¶14.

ICE Jodie Perttu reviewed the plaintiff's November 28, 2014 complaint, but she considered it a complaint about staff, not a complaint "raising health and safety issues." Id. at ¶23. As Perttu saw it, at the time the plaintiff submitted the complaint, his health and safety were no longer at risk. Id. She returned the plaintiff's offender complaint with a letter informing him that he could not file more than two offender complaints per calendar week.[2] Dkt. No. 49 at ¶24. She stated that although there were exceptions to the two-complaint rule, the plaintiff's November 28, 2014 complaint did not meet either exception. Id.

The defendant asserts that the plaintiff could have re-submitted this complaint the following week; she says that the "new calendar week" started on

---

[2] Perttu's duties and responsibilities are laid out in Wis. Admin Code §DOC 310. Dkt. No. 49 at ¶¶2-3. In her capacity as an ICE, she has access to offender complaints filed by inmates at Green Bay. Id. at ¶3.

December 1, 2014, which would have been within the fourteen days after the November 19, 2014 incident. Id. at ¶26. The plaintiff did not resubmit the complaint until January 9, 2015. Id. at ¶27. The plaintiff explained at that time that the complaint was late because he had been on observation status from November 28, 2014 until January 7, 2015. Id. at ¶28.

Perttu contacted Captain Jay Van Lanen (not a defendant) about the plaintiff's claim that his re-submitted complaint was late because he'd been on observation status. Id. at ¶29. Van Lanen told Perttu that "when inmates are on paper and/or pen restrictions, they are allowed to come out of their cells to fill out forms and write letters upon request." Id. at ¶¶29, 55.

The defendant asserts that on December 5, 2014, the plaintiff was "allowed" a book, two sheets of paper and a crayon during regular rounds. Id. at ¶56. The defendant alleges that at this time, the plaintiff would have been allowed to keep the crayon as property. Id. at ¶¶56-57. The defendant says that the plaintiff's mail restriction[3] was lifted December 12, 2014. Id. at ¶¶58-59. He would have been issued his retained mail at that time, and "would have had full access to his mail after December 12, 2014." Id. According to the plaintiff, his mail restriction was lifted on December 16, 2014. Dkt. No. 57 at ¶¶20-22.

---

[3] Inmates on a mail restriction do not have access to any mail until the restriction is lifted. Dkt. No. 49 at ¶¶44-45. Prison staff collect and hold the mail until the mail restriction is lifted. Id. at ¶44. Once the restriction is lifted, the inmate can read the accumulated mail; he also receives and can read mail daily from that day forward. Id. at ¶¶51-52.

5

He states that he could have only "personal mail" at that time, which included letters from friends and family only. Id. The plaintiff states that he did not receive Perttu's return notice until January 8, 2014, the day after prison staff released him from clinical observation. Id. at ¶¶23, 27.

It appears that after speaking to Van Lanen, Perttu reviewed the Inmate Complaint Tracking System ("ICTS"). Dkt. No. 49 at ¶30; see also Dkt. No. 50-1 at 1. She noted that the plaintiff had submitted six other offender complaints while he was in clinical observation between November 28, 2014 and January 7, 2015. Id. Because the plaintiff had demonstrated that he was able to file offender complaints while in clinical observation, Perttu rejected the plaintiff's offender complaint as untimely; she concluded that the plaintiff did not have "good cause" for his untimely filing under Wis. Admin. Code §DOC 310.09(6). Dkt. No. 49 at ¶¶31-34. (She also returned the six other complaints he'd filed while on observation status. Id. at ¶25.)

The plaintiff appealed the rejection of his complaint on January 20, 2015. Id. at ¶35. The defendant says that in the appeal, the plaintiff said he wanted to resubmit the complaint because he did not want to submit the complaint form and then "have it rejected behind not contacting the correct individuals to exhaust that remedy before filing a complaint." Id. at ¶36. On February 2, 2015, Dr. Gary Ankarlo, the "Reviewing Authority," found that the complaint was appropriately rejected. Id. at ¶¶35-37.

6

## II. Discussion

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides in part that "[n]o action shall be brought with respect to prison conditions under § 1983. . . by a prisoner. . . until such administrative remedies as are available are exhausted." 42 U.S.C §1997e(a). The exhaustion rule gives prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and it produces a "useful administrative record" for the district court to rely on. See Jones v. Bock, 549 U.S. 199, 204 (2007) (citing Woodford v. Ngo, 548 U.S. 81, 94-95 (2006)). A district court "lacks discretion to resolve the claim on the merits" if the prisoner fails to properly exhaust administrative remedies. Perez v. Wis. Dep't of Corr., 182 F.3d 532, 535 (7th Cir. 1999).

"The PLRA does not, however, demand the impossible." Pyles v. Nwaobasi, 829 F.3d 860, 864 (7th Cir. 2016). "Remedies that are genuinely unavailable or nonexistent need not be exhausted." Id. "A remedy becomes unavailable 'if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" Id. (quoting Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006)). "In such cases, the prisoner is considered to have exhausted his administrative remedies." Id. (citing Turley v. Rednour, 729 F.3d 645, 650 n. 3 (7th Cir. 2013)).

The rules governing Wisconsin's ICRS provide that "[a]n inmate may use the ICRS to raise significant issues regarding rules, living conditions, staff

actions affecting institution environment, and civil rights complaints . . . ." Wis. Admin. Code §DOC 310.08 (2014-2015). "An inmate shall file a complaint within 14 calendar days of the occurrence giving rise to the complaint." §DOC 310.09(6). "Inmates may not file more than 2 complaints per calendar week," but "ICE shall exclude complaints that raise health and personal safety issues from this limit." §DOC 310.09(2). "ICE shall return, and not process as complaints, submissions that do not meet the requirements [described above]." §DOC 310.09(3).

ICE can also "reject" an offender complaint that is submitted "beyond 14 calendar days from the date of the occurrence giving rise to the complaint and provides no good cause of the ICE to extend the time limits." §DOC 310.11(5)(d). "Usually, 'good cause' is 'occasioned by something that is not within the control of the movant.'" Pyles, 829 F.3d at 866. "It 'applies in situations where there is no fault—excusable or otherwise.'" Id.

In this case, the "occurrence giving rise to this complaint" happened on November 19, 2014. Under §DOC 310.09(6), the plaintiff was required to file his inmate complaint within fourteen calendar days of that date—on or before December 3, 2014. The plaintiff timely filed his inmate complaint, but Perttu returned the complaint the day he filed it because he had filed more than two complaints that week in violation §DOC 310.09(3).

According to the defendant, the plaintiff should have re-submitted his complaint the next week, on Monday December 1, 2014. See Dkt. No. 49, ¶26. She notes that this would have been within the fourteen-day deadline. The

9

defendant's own facts indicate, however, that the plaintiff was on a pen and/or pencil restriction until December 5, 2014. The defendant argues that after December 5, the plaintiff could have two sheets of paper, a crayon, and all his mail in his cell. But the defendant also says that the plaintiff's mail restriction was not lifted until December 12, 2014 (in the plaintiff's version, December 16, 2014). Because the plaintiff was not receiving mail before December 12, 2014, he could not have received the returned complaint, and Perttu's explanation, until at least that date.

The defendant argues that the plaintiff should have refiled his inmate complaint on or shortly after December 12. The defendant notes that the plaintiff filed five other inmate complaints in December 2014, see dkt. no. 50-1 at 1, and reasons that he could have refiled the November 28, 2014 during that time.

The plaintiff responds that although he had access to writing materials and paper starting December 5, 2014, dkt. no. 57 at ¶10, he was not approved to receive mail until December 16, 2014, and then the approval was for "personal mail" from friends and family, id. at ¶¶20-21. He says that he wasn't informed that he'd been approved to receive personal mail. Id. at ¶22. He says that he did not receive any mail at all between December 12, 2014 and January 7, 2015, the date he was removed from observation status. Id. at ¶24. He received his property on January 8, 2015, and that's when he realized that the November 28, 2014 complaint had been rejected. Id. at ¶27.

The Seventh Circuit has considered the issue of "what happens when a response to a grievance does not reach the prisoner, and so he does not know when to move along to the next step[.]" Pyles, 829 F.3d at 868. The court found that it is the *defendant's* burden to prove that the plaintiff failed to exhaust his administrative remedies, and that the defendant cannot do so when the plaintiff provides a statement indicating that he did not receive a response to his grievance. Id. at 869. Indeed, a plaintiff's statement is "competent evidence" that can defeat summary judgment. Id. The Seventh Circuit concluded that when the plaintiff does not receive a response to his inmate complaint, he "exhausted such remedies as were available to him, and so summary judgment for the defendants on the basis of failure to exhaust was inappropriate." Id. at 869.

The plaintiff has attested that he did not know that the November 24, 2014 complaint had been rejected until he received his property on January 8, 2015. Given that, it is irrelevant that he had access to writing materials on December 5, 2014, or that records show that his mail restrictions were lifted on December 12. Until he saw the rejected complaint on January 8, 2015, he did not know that he needed to do anything else. The defendant concedes that the plaintiff filed the re-submitted complaint on January 9, 2015—the next day. The court finds that the plaintiff had "good cause" to re-submit the complaint more than fourteen days after the events of November 19, 2014, because he was unaware that it hadn't been accepted until January 8, 2015. The court will deny the defendant's motion for summary judgment.

### III. Conclusion

The court **DENIES** the defendant's motion for summary judgment based on failure to exhaust administrative remedies. Dkt. No. 45.

Because the court has denied the defendant's motion for summary judgment, it appears this case is ready for either mediation with a magistrate judge or a trial. The court will recruit counsel to assist the plaintiff. Once it finds a lawyer willing to represent the plaintiff, it will send the plaintiff a consent form. The plaintiff must complete and return this form if he wishes to proceed with the recruited counsel. After the court receives the form, it will set a date for a scheduling conference with defense counsel and the plaintiff's lawyer.

Dated in Milwaukee, Wisconsin this 14th day of March, 2019.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**